IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SCORPCAST, LLC dba HAULSTARS, <br><br> Plaintiff, <br> v. <br><br> MG FREESITES LTD, <br><br> Defendant. | CIVIL ACTION NO. 6:20-cv-877 <br><br> ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT <br><br> **JURY TRIAL DEMANDED** |

## **ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Scorpcast, LLC dba HaulStars ("HaulStars" or "Plaintiff") files this original complaint against MG Freesites Ltd ("MG Freesites" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### **PARTIES**

1.      HaulStars is a limited-liability company formed under the laws of the State of Delaware, registered at 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware 19801, and with its principal place of business at 3034 S. Durango Drive, Suite 100, Las Vegas, Nevada.

2.      During the past nine years, HaulStars' innovations have enabled companies around the world to enhance their interactive video offerings and improve their customers' website experience by enabling platforms for interactive videos.  HaulStars conducts leading-edge research and development to create innovative interactive video technologies, including patented interactive video technology that makes content experiential and shoppable.  As described more fully below,

HaulStars' technology allows users to engage internet content through video, including content self-navigation, content aggregation, and/or content distribution.

3.        Defendant MG Freesites is a company organized and existing under the laws of the country of Cyprus, with the address for its principal executive office registered at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540.

## JURISDICTION AND VENUE

4.        Plaintiff repeats and re-alleges the allegations in Paragraphs 1-3 as though fully set forth in their entirety.

5.        This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

6.        Defendant is subject to this Court's specific personal jurisdiction pursuant to principles of due process and FRCP 4(k)(2), the federal long-arm statute, because (1) it has substantial contacts with the United States and has committed and/or induced acts of patent infringement in the United States; and (2) it is not subject to jurisdiction in any state's courts of general jurisdiction.  Upon information and belief, Defendant receives a substantial portion of its online traffic and revenue from users located in Texas.

7.        Defendant is also subject to this Court's specific personal jurisdiction because it has purposefully availed itself of the courts of the United States, including by bringing suit against Plaintiff in the District of Delaware, in the action *MG Freesites LTD v. ScorpCast, LLC d/b/a HaulStars*, No. 1:20-cv-01012-UNA (D. Del. July 28, 2020).

8.        Defendant is also subject to this Court's specific personal jurisdiction pursuant to the Texas Long Arm Statute, due at least to Defendant's substantial business in Texas and this forum, including (i) at least a portion of the infringements alleged herein; and/or (ii) regularly

doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

9.     Specifically, Defendant intends to do and does business in Texas, directly or through subsidiaries or intermediaries and makes, uses, offers for sale, sells, imports, advertises, makes available, and/or markets products and services within the State of Texas, and more particularly, within this district, that infringe the patents-in-suit as described more particularly below.  Further, Defendant specifically targets the State of Texas by making its products available throughout the State of Texas via websites such as www.pornhub.com (and others described below).

10.     A significant portion of Defendant's revenue comes from customers located in the State of Texas.

11.     Venue is proper in this district under 28 U.S.C. §§ 1400(b) and/or 1391(b)-(c). Defendant is a foreign corporation and may be sued in this district.

## THE TECHNOLOGY

12.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-11 as though fully set forth in their entirety.

13.     HaulStars was founded in 2011 by experienced entrepreneurs Narb Avedissian and Nikhil Sreenath (the "Inventors"), who have been business partners for over 14 years and have worked together on three startup companies.  After working together successfully on their second company, the Inventors realized an opportunity to engage internet users with video technology, which led to the birth of HaulStars.

14.     The initial idea for creating an interactive video experience was first sparked in 2007 when Mr. Avedissian was interested in buying a new laptop.  He thought a video review from an actual customer would be helpful in the process.  As luck would have it, there was one online

video of an actual customer unboxing the very laptop at issue.  As Mr. Avedissian watched, he wanted to learn more and envisioned the ability to link to or purchase the item being reviewed. But at the time, video platforms did not offer interactive tools or commerce-enabled features for video.

15.     The Inventors later noticed that people were creating and uploading video reviews of their favorite products and millions of people were watching those videos.  After watching those videos and reading viewer comments, the Inventors identified consumer pain points and developed features to address gaps that existed in the online video experience and invented a novel, interactive experience.  By way of example, viewers consistently asked where in a video they could find a particular item mentioned in the title or description of a video.  These issues posed a problem that called for a marketplace solution and presented an opportunity for the Inventors to create a new technology solution for users and brands.  The Inventors created a tagging feature that enables content creators to tag any item at a specific point in a video. Viewers are then able to click on any tagged item and discover more about it or self-navigate to a particular scene related to that item. The Inventors' novel technology for creating interactive video experiences increased customer engagement with videos, which in turn led to increased product use and purchases.  The patents-in-suit detail the systems and methods underlying this novel technology.  Despite their humble beginnings, the Inventors' technology succeeded in becoming integrated into the websites and social media pages of major companies.  The Inventors' campaigns with major brands proved the value of their invention:  the HaulStars technology increases customer engagement and leads to increased traffic and sales.

16.     Today the HaulStars technology has become the *de facto* industry standard for interactive video.

4

17.     Haulstars has also expanded into other relevant fields and holds a broad variety of patents related to online videos and content delivery systems.  The patents-in-suit reflect the broad nature of Haulstars' patent portfolio.

18.     U.S. Patent No. 9,899,063 ("the '063 Patent"), is generally directed to systems and methods for providing a video player that enables video content to be displayed on a user terminal with controls to enable the user to quickly navigate to specific portions of the video.

19.     U.S. Patent No. 8,595,057 ("the '057 Patent"), is generally directed to systems and computer-readable mediums for apportioning revenue based on content delivery by an online community, including revenue generated through advertising, services associated with an artist's performance, and/or media sales.

20.     U.S. Patent No. 9,703,463 ("the '463 Patent"), is generally directed to systems and methods for content aggregation and distribution, providing a video player that enables video content to be displayed on a user terminal with controls to enable the user to quickly navigate to specific portions of the video.

21.     U.S. Patent No. 9,832,519 ("the '519 Patent"), is generally directed to video systems and computer-implemented methods for distributing interactive videos, including enhanced video navigation and video content sharing.

22.     U.S. Patent No. 10,205,987 ("the '987 Patent"), is generally directed to systems and methods for providing a video player and interactive video distribution system that enables video content to be displayed on a client device, with controls to enable the user to quickly navigate to specific portions of the video.

23.     U.S. Patent No. 10,354,288 ("the '288 Patent"), is generally directed to systems and computer-readable mediums for apportioning revenue based on content delivery by an online

community, including revenue generated through advertising, services associated with an artist's performance, and/or media sales.

24.     U.S. Patent No. 10,506,278 ("the '278 Patent"), is generally directed to an interactive video distribution system that enables a video player and video content to be provided to a client device through a client server arrangement, with controls to enable the user to quickly navigate to specific portions of the video..

25.     U.S. Patent No. 10,560,738 ("the '738 Patent"), is generally directed to an interactive video distribution system providing a video player that enables video content to be displayed on a client device with controls to enable the user to quickly navigate to specific portions of the video.

26.     The '063, '057, '463, '519, '987, '288, '278, and '738 Patents are collectively referred to hereinafter as the "Asserted Patents."

## MG FREESITES' PORNOGRAPHIC TUBE SITE BUSINESS

27.     Defendant owns and operates multiple websites commonly referred to as "tube sites."

28.     In general, tube sites allow third parties (sometimes referred to as "Content Partners") to upload content to a website and allows users to view certain of that content for free.

29.     In Defendant's case, the content is typically videos, and more particularly, pornographic videos, but Content Partners can also upload other content including, but not limited to, pictures, photographs, and images.

30.     Defendant owns and operates the Pornhub network, which consists of multiple pornographic tube sites including, but not limited to, Pornhub (www.pornhub.com), YouPorn

(www.youporn.com), RedTube (www.redtube.com), Tube8 (www.tube8.com), Thumbzilla (www.thumbzilla.com), and XTube (www.xtube.com) (collectively "the Tube Sites").

31.     Defendant also owns and operates ModelHub (www.modelhub.com), which touts itself as a better way for Content Partners to sell their clips, photos, and merchandise.

32.     Defendant's Partner Programs are described below.

### THE CONTENT PARTNER PROGRAM

33.     Defendant's "Content Partner Program" is designed for pay-site owning third-party studios to expose their content to millions of visitors and drive traffic to the studios' pay-sites.

34.     Defendant's Content Partner Program has a global reach of over 100 million daily users.

35.     Content Partners can create a "Channel" on the Tube Sites—a personalized page where the Content Partner's videos are hosted on the Tube Site and can be found by users.

36.     The Channel includes free advertising space on both at least the Content Partners' Channel and alongside their individual videos.

37.     Some Content Partners have multiple Channels, each for a different type of content.

38.     Content Partners also have a profile page that lists, *inter alia¸* all of their Channels.

39.     Content Partners can upload videos using the Defendant's system, placing the videos for viewing within the Content Partner's Channel(s), and for viewing for searches within the Tube Site itself.

40.     Users can subscribe to particular Channels.  Once a user subscribes to a Channel, the user will receive notifications when the Content Partner posts new videos.

41.     Users can also subscribe to a particular Content Partner's profile, which will subscribe the user to all of the Content Partner's Channels.

42.     The profile also includes a "stream" feature where the Content Partner can make textual postings.

43.     Better performing Channels will have a chance to have their videos featured more often on the Tube Sites.

44.     Users of the Tube Sites can give feedback on the Content Partner's videos by, for example, giving the video a "thumbs up" for a like or a "thumbs down" indicating a dislike.  Users can also provide comments on the videos.

45.     The user's feedback, and other information and data, is received by PornHub's system.

46.     Content Partners have access to a video manager that gives the Content Partner statistics for each video including, for example, the view count for each video, how many times a video was added to favorites, how many comments the video has received, and the number of playlists in which it appears.

47.     Defendant also has access to the video and Content Partner statistics.

48.     Partners can also earn various Achievements based on factors such as how long the Content Partner has been a part of the Content Partner Program, how many videos have been posted, how many subscribers have been enrolled, how many times the profile has been viewed and many others.

49.     One goal of the Content Partner Program is to promote the Content Partner's content to users in order to direct traffic back to the Content Partner's own website.

50.     These websites include, but are not limited to, subscription sites, model sites/pages, cam sites, and sites selling products.

51.     If a user is directed from the Tube Site to the partner's website and the user becomes a paying member of the Content Partner's website, Defendant is compensated.

52.     Defendant receives payments through the Content Partners Affiliate Program.

53.     According to Defendant, an "Affiliate Program" is an application that monitors traffic and sales sent to the Content Partner's pay-site from Defendant tube-sites using linkcodes produced by the Affiliate Program itself.

54.     Examples of such Affiliate Programs include, but are not limited to, CCBill, Nats, and Epoch.

55.     Although there are variations between different Affiliate Programs, Defendant tends to collect around 50% of traffic revenues derived from subscribers to Content Partner's pay-site(s) sent from Defendant's Tube Sites.

56.     In the Content Partner Program, Content Partners receive compensation based upon the number of views.

57.     The Pornhub Premium Viewshare Program, also known as "Pornhub Premium," is designed to earn the Content Partner revenue based upon the number of views the Content Partner's content receives.

58.     In order to be in the Premium Viewshare Program, the Content Partner must upload full-length, high-definition videos to the Tube Sites.  These videos are placed behind a paywall.

59.     Every time a user views a video that is part of the Premium Viewshare Program, the Content Partner is compensated.

60.     In 2019, the average Viewshare rate was $35.58 per 1000 views.

61.     Videos that can be viewed as part of the Premium Viewshare Program have a prominent "Join" button on the Channel to drive traffic to the Content Partner's pay-site.

62.     The Content Partner need not have a pay-site in order be a part of the Premium Viewshare Program.  The only requirement is that the Content Partner must upload high-definition video.

63.     How much the Content Partner earns in the Premium Viewshare Program varies depending on subscriptions (initial joins as well as re-bills, membership or access fees, or other fees charged to End Users), secondary revenue generated from a "members area," up sells, cross sales, viewer visits, referrals, and visitor list sales.

## THE MODEL PROGRAM

64.     Defendant's "Model Program" utilizes Defendant's systems and hardware, including at least servers, processors, networks, websites, databases, ASIC, and non-transitory memory for storing instructions.

65.     Defendant's Model Program is designed to let artists upload videos to the Tube Sites in order to monetize their pornographic videos.

66.     Artists can upload videos, photographs, and images through Defendant's system.

67.     Monetization of the artist's content is achieved, in part, by allowing the artist to receive a percentage of the advertising revenue associated with the artist's videos.

68.     Defendant's system apportions advertising revenue to artists through the Model Program.

69.     In order to get paid, artists must meet threshold requirements such as generating over $100 in monthly earnings.

70.     The artist can make additional money by utilizing additional services, such as selling videos on ModelHub, or by receiving tips in the Live Cam portion of the Tube Sites.

71.     In the Model Program, artists are paid a percentage of the advertising revenue made on verified videos.

72.     The percentage of advertising revenue paid to the artist is dependent on the performance of the advertisements around the video.

73.     Defendant uses factors such as the number of clicks, the user country, and sales to determine the performance of a video and the ultimate percentage of advertising revenue paid to the artist.

74.     The average Revenue Per Mille (RPM or per 1000 views) in 2018 was $0.64; in 2017 was $0.69; in 2016 was $0.62; and in 2015 was $0.44.

75.     If a particular artist does not meet the threshold by making more than $100 in a month, the artist will not receive any payment for that month.

76.     Defendant allows artists to post videos on the Tube Sites through the Model Program.

77.     Users of the Tube Sites can give feedback to artists' videos by giving the video a "thumbs up" for a like or a "thumbs down" indicating a dislike.  Users can also provide comments on the videos.

78.     Artists are ranked on both the Tube Sites and ModelHub.

79.     The ranking can be segregated by Amateur or Pornstar.

80.     The ranking on ModelHub is calculated daily by an algorithm that takes the artist's performance and engagement on the site into account.

81.     ModelHub runs multiple monthly contests between the artists.  For example, there is a monthly prize for Top Earners.  There is also a monthly prize for Top Amateurs.  Additionally,

there are Raffle Winners from time to time.  There are also Models of the Month and Top Videos of the Month.

82.     Artists that are a part of ModelHub can participate in Defendant's live cams using, for example, Streamate (www.streamate.com).  Live cams allow the artist to communicate directly with users including at least through video chat.

83.     Artists can communicate with multiple users through the community live cams or one-on-one with users in private chats.

84.     When users participate in live cam sessions, Defendant's system allows the users to tip the artists.  Defendant takes a portion of these tips and provides the remainder to the artist.

85.     Artists can choose to record their live cam sessions in addition to the normal feed, which allows the artist to have the ability to later sell the live cam session as a video.

86.     An artist can be a member of both the Model Partner Program and the Content Partner Program.

## DEFENDANT'S VIDEO PLAYBACK SYSTEM

87.     Defendant's Video Playback System includes many hardware components, including at least one or more servers, network interfaces, at least one processing device, databases, video data stores, and non-transitory memory.  The non-transitory memory includes programmatic code that, when executed by a processing device, performs operations.

88.     Defendant allows participants in the Content Partners Program, the Model Program, and others to upload content to the Tube Sites via a network.

89.     Defendant's Video Playback System is utilized by the Tube Sites and others of Defendant's websites that have primary desktop versions of their websites as well as mobile and tablet versions.

90.     Defendant's Video Playback System allows uploaded videos to be formatted in ways that provide a better user experience.  This formatting includes at least video titles, tags, categories, thumbnails, and action tags.

91.     Defendant describes the formatting options in places such as its "Pornhub Playbook" and in postings on its websites.

92.     In its "Pornhub Playbook," Defendant describes how to optimize advertising space available to artists and Content Partners.  Artists and Content Partners can provide links to, *inter alia*¸ their own websites and advertisements.

93.     Defendant advises participants in the Content Partner Program and the Model Program how to name their videos so that they will appear more prominently in searches.  For example, Defendant advises users to include pornstar names in video titles because pornstar names are highly searched on the Tube Sites.

94.     Defendant gives similar advice for using effective video categories, video tags, and pornstar tags.

95.     Defendant's Video Playback System contains a video player bar, or scrubber bar.

96.     Defendant's Video Player bar allows a user to drag along the bar to move to a particular point in a video.

97.     Defendant's Video Playback System allows for the use of action tags.  Action tags are indicators that can be added to the video player bar to help users navigate directly to the desired portion of the video easily.

98.     Action tags indicate significant events or actions in the video, such as a specific activity.

99.     Multiple action tags can be added to videos uploaded through the system.

100.     The action tags are presented in the playback area of the video player at least as tick marks, thumbnail images, text, and/or combinations thereof.  The playback area generally includes a scrubber bar area.

101.     Action tags may appear within the scrubber bar area.  The action tags may be overlaid in the playback area at a segment of the video where the action tag occurs.

102.     Instead of only moving the action along with the video player bar, the viewer can navigate directly to the desired portion of the video using the action tag.

103.     Action tags can also be made to appear in the playback area by selecting the "Jump to" feature on the desktop site.  The action tags will appear in the playback area of the video player once the "Jump to" feature is selected.

104.     In the mobile and tablet sites, the action tags can appear as an overlay in the playback area by selecting the two arrows in the upper right corner of the playback area.

105.     Action tags are added to video to make the user experience better.

106.     Defendant provides action tags as part of their system and encourages Content Partner and artists to use them to ensure that users perceive Defendant's videos as premium content.

107.     Action tags include images from products, such as pornographic videos, that are for sale either directly, indirectly, or by subscriptions to third-party websites.

108.     For example, if a Content Partner uploads a video and utilizes action tags, Defendant will get revenue if a user sees the image in the action tag and decides to go to the Content Partner's website and subscribe in order to view the video or others like it.

109.     Each video has a custom URL associated with it, and there is a specific URL for each section of a video.  For example, on Pornhub a user can select "share" from the playback

menu.  A unique URL is generated for each moment in the video.  For example, the URL: https://www.pornhub.com/view_video.php?viewkey=ph5f260170b2fdb&t=90 takes the user to the video at the 1:30 mark.  The URL: https://www.pornhub.com/view_video.php?viewkey=ph5f260170b2fdb&t=180 takes the user to the 3:00 mark in the same video.

110.     Action tags, like the individual URLs described above, both refer to a specific instance in a video.

111.     Defendant's Video Playback System includes a share feature, which allows a video or other content to be shared with another through at least providing a URL, through Twitter, Reddit, Google+, StumbleUpon, Blogger, email, or embeddable HTML.

112.     Defendant's Video Playback System receives and collects feedback, information, and data from each user and Content Partner who uses the Video Playback System, which Defendant is able to access and analyze.

113.     Defendant uses the feedback, information, and data from each user and Content Partner who uses the Video Playback System for Defendant's own analytics.

**DEFENDANT'S OFFERS OF INTERACTIVE PORNOGRAPHY FOR SALE**

114.     As an example of Defendant's offers of interactive pornography for sale, Defendant offers to sell and sells subscriptions and access to the Life Selector website (www.lifeselector.com).

115.     Life Selector is a pornographic content producer that specializes in interactive pornography.

116.     Life Selector videos are in the format of "choose your own adventure" where the user is asked to make in-video decisions that control the story.

117.    Life Selector is a Content Partner of Defendant.

118.    When presented to users, the videos uploaded to the Tube Sites by Content Partner, such as Life Selector, are often accompanied by links and advertisements offering to sell subscriptions to the Content Partner's website.

119.    For    example,    on    Pornhub,    the    Life    Selector    Channel (https://www.pornhub.com/channels/lifeselector) contains a button, "Join Life Selector Now," that takes the user directly to a website where the user can subscribe to Life Selector.

120.    Additionally, Life Selector videos on Pornhub contain an advertisement below the video, which is another link to Life Selector's website and is an offer to sell a subscription to Life Selector.

121.    By further example, on the YouPorn site, the Life Selector Channel (https://www.pornhub.com/channels/lifeselector) has both a banner ad and a "JOIN Life Selector" button, both of which take the user directly to a website where the user can subscribe to Life Selector.

122.    Additionally, Life Selector videos on the YouPorn site contain an advertisement below the video, which is another link to Life Selector's website and is an offer to sell a subscription to Life Selector.

123.    By further example, on the RedTube site, the Life Selector Channel (https://www.redtube.com/channels/lifeselector) has a "JOIN LIFESELECTOR" button that takes the user directly to a website where the user can subscribe to Life Selector.

124.    Additionally, Life Selector videos on the RedTube site contain an advertisement below the video, which is another link to Life Selector's website and is an offer to sell a subscription to Life Selector.

125.    By further example, on the Tube8 site, the Life Selector Channel (https://www.tube8.com/channel/7712/lifeselector/) has a "JOIN LIFESELECTOR NOW" button that takes the user directly to a website where the user can subscribe to Life Selector.

126.    Additionally, Life Selector videos on the Tube8 site contain an advertisement below the video, which is another link to Life Selector's website and is an offer to sell a subscription to Life Selector.

127.    By further example, on the Thumbzilla site, Life Selector videos (for example, the video found at https://www.thumbzilla.com/video/ph5ddfdc6d25726/birthday-party-foursome) has a link "INTERACTIVE PORN WITH PORN STARS – TRY IT FOR FREE!" button that takes the user directly to a website where the user can subscribe to Life Selector.

128.    By further example, on the XTube site, the Life Selector Channel (https://www.xtube.com/profile/lifeselector-40142431) has a "Join this site now!" button that takes the user directly to a website where the user can subscribe to Life Selector.

129.    Additionally, Life Selector videos on the XTube site contain a "Join this site now" button below the video, which is another link to Life Selector's website and is an offer to sell a subscription to Life Selector.

130.    Additionally, Life Selector videos on the XTube site display an offer to "Join Lifeselector Now" overlaying the video when paused.

131.    Life Selector's website is part of a system that allows users to control the playback of video files.  Life Selector's servers have processors and a network interface for connecting users to a video data store through, for example, the internet.  Contained within Life Selector's servers is programmatic code stored in non-transitory memory that allows the system to receive interactive videos using the network interface.

132.     The programmatic code is executed by processing devices in the servers.

133.     The programmatic code also allows the system to store images that are associated with the video.  Each video has multiple images associated with it.  Each image is associated with a different video segment.

134.     Associated images (along with textual information) are presented at least two at a time to a user.  The associated images and textual information are not from the video.

135.     The associated images and textual information are displayed over the video during video playback.

136.     The system asks users to make a decision and select one of the plurality of images.

137.     When an image is selected, the video navigates to a different segment of the video.

## COUNT I

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,899,063

138.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-137 as though fully set forth in their entirety.

139.     On February 20, 2018, U.S. Patent No. 9,899,063 ("the '063 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "System and Methods for Providing User Generated Video Reviews."  HaulStars owns all substantial rights, interest, and title in and to the '063 Patent, including the sole and exclusive right to prosecute this action and enforce the '063 Patent against infringers, and to collect damages for all relevant times.  A copy of the '063 Patent is attached as Exhibit A.

140.     The '063 Patent describes a system for generating interactive videos.  The claims of the '063 Patent are not directed to an abstract idea.  For example, claim 9 of the '063 Patent recites hardware components of a system, including a processing device, a network interface configured to communicate over a network with a video data store, and a non-transitory memory

18

storing programmatic code that when executed by the at least one processing device causes the system to perform a series of operations.  Those operations cause the claimed system to receive video, process the video in specific ways, and enable navigation events to occur during playback of the video in response to a user selection.  Taken as a whole, the claimed inventions of the '063 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components performing an inventive series of operations that improve upon the functionality of interactive video content.

141.     The written description of the '063 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

142.     Defendant directly infringes (literally and/or under the doctrine of equivalents) at least claim 9 of the '063 Patent by making, using, selling, and/or offering for sale its Video Playback System.  As described above, at least the Video Playback System meets each of the elements of at least claim 9 of the '063 Patent.

143.     Defendant also infringes at least claim 9 of the '063 Patent by offering to sell and selling subscriptions and access to Content Partner and artist interactive videos, such as those described in the Section "Offers For Sale of Interactive Pornography," *supra*.

144.     When the user selects an image, the user is taken to the associated segment of the video.

145.     Defendant receives and collects feedback, information, and data about the user's selections when using the Video Playback System.

146.     As described above, Defendant made, had made, used, sold, and/or offered to sell products and/or systems, including servers that include at least one processing device, a network interface, and non-transitory memory for storing programmatic code that perform operations according to the claimed inventions of the '063 Patent.

147.     By doing so, Defendant has directly infringed (literally and/or under the doctrine of equivalents) at least claim 9 of the '063 Patent.  Defendant's infringement in this regard is ongoing.

148.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

149.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '063 Patent.

## ADDITIONAL ALLEGATIONS REGARDING INDIRECT INFRINGEMENT OF THE '063 PATENT

150.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-149 as though fully set forth in their entirety.

151.     Defendant has also indirectly infringed the '063 Patent by inducing others to directly infringe the '063 Patent.  Defendant has induced users, including Defendant's customers, to directly infringe the '063 Patent (literally and/or under the doctrine of equivalents) by using the accused systems, methods, and/or services.  Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to make or use the Accused Instrumentalities in a manner that infringes one or more claims of the '063 Patent,

including, for example, Claim 9 of the '063 Patent.  Such steps by Defendant included, among other things, advising, encouraging, or directing personnel, contractors, or suppliers to use the accused services in an infringing manner; and/or distributing instructions that guide personnel, contractors, or suppliers to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '063 Patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '063 Patent.  Defendant's inducement is ongoing.

152.    Defendant has knowledge of the '063 Patent at least as of the date when it was notified of the filing of this action.

153.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

154.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

155.    Defendant's direct and indirect infringement of the '063 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

156.    Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,595,057

157.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-156 as though fully set forth in their entirety.

158.     On November 26, 2013, U.S. Patent No. 8,595,057 ("the '057 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "System For Apportioning Revenue Based On Content Delivery By An Online Community." HaulStars owns all substantial rights, interest, and title in and to the '057 Patent, including the sole and exclusive right to prosecute this action and enforce the '057 Patent against infringers, and to collect damages for all relevant times.  A copy of the '057 Patent is attached as Exhibit B.

159.     The '057 Patent describes a system for apportioning revenue generated through advertisement associated with media sales in an online community.  The claims of the '057 Patent are not directed to an abstract idea.  For example, Claim 2 of the '057 Patent recites a non-transitory computer-readable medium, and processors, which includes computer-readable instructions that, upon execution of the instructions by the processors, perform various tasks.  For example, the processors obtain a media file, and store the media file in a non-transitory computer-readable medium that is accessible by a computer via a network.  The media file is associated with an account of an author of the media file.  The one or more processors present the media file to an online community, obtain feedback on said media, determine that a threshold condition based on the feedback has been met, present a revenue participation offer based on said threshold condition, deliver advertisement content along with said media file to said online community, calculate an advertisement score based on revenue-generating activity, and apportioning revenue to the author based at least in part on the advertisement score.  Taken as a whole, the claimed inventions of the '057 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the

claimed inventions include inventive components performing an inventive series of operations that improve upon the functionality of video delivery and identification of media authors to whom to offer revenue-sharing, advertising, and revenue sharing.

160.     The written description of the '057 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

161.     Defendant directly infringes (literally and/or under the doctrine of equivalents) at least Claim 2 of the '057 Patent by making, using, selling, and/or offering for sale Defendant's Model Program and its Content Partner/Premium Viewshare Program.  Defendant's infringement in this regard is ongoing.

162.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

163.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '057 Patent.

## ADDITIONAL ALLEGATIONS REGARDING INDIRECT INFRINGEMENT OF THE '057 PATENT

164.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-163 as though fully set forth in their entirety.

165.     Defendant has also indirectly infringed the '057 Patent by inducing others to directly infringe the '057 Patent.  Defendant has induced users, including Defendant's customers, to directly infringe the '057 Patent (literally and/or under the doctrine of equivalents) by using the accused systems, methods, and/or services.  Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to make or use the Accused Instrumentalities in a manner that infringes one or more claims of the '057 Patent, including, for example, Claim 2 of the '057 Patent.  Such steps by Defendant included, among other things, advising, encouraging, or directing personnel, contractors, or suppliers to use the accused services in an infringing manner; and/or distributing instructions that guide personnel, contractors, or suppliers to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '057 Patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '057 Patent.  Defendant's inducement is ongoing.

166.     Defendant has knowledge of the '057 Patent at least as of the date when it was notified of the filing of this action.

167.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

168.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

169.     Defendant's direct and indirect infringement of the '057 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

170.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,703,463

171.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-170 as though fully set forth in their entirety.

172.     On July 11, 2017, U.S. Patent No. 9,703,463 ("the '463 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "System And Methods For Providing User Generated Video Reviews."   HaulStars owns all substantial rights, interest, and title in and to the '463 Patent, including the sole and exclusive right to prosecute this action and enforce the '463 Patent against infringers, and to collect damages for all relevant times.  A copy of the '463 Patent is attached as Exhibit C.

173.     The '463 Patent describes a system for apportioning revenue generated through advertisement associated with media sales in an online community.  The claims of the '463 Patent are not directed to an abstract idea.  For example, claim 11 of the '463 Patent recites hardware components of a system, including a processing device, a network interface configured to communicate over a network with a video data store, and a non-transitory memory storing programmatic code that when executed by the at least one processing device causes the system to perform a series of operations.  Those operations cause the claimed system to access video on a

25

video data store, over a network, and receive a plurality of images.  The plurality of images includes an image of a product that corresponds to an image in the video.  The system processes the video and images in specific ways and enables the display of the images associated with segments of the video in response to user action.  Taken as a whole, the claimed inventions of the '463 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components performing an inventive series of operations that improve upon the functionality of interactive video content.

174.     The written description of the '463 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

175.     Defendant directly infringes (literally and/or under the doctrine of equivalents) at least Claim 11 of the '463 Patent by making, using, selling, and/or offering for sale Defendant's Video Playback System.  Defendant's infringement in this regard is ongoing.

176.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

177.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '463 Patent.

## ADDITIONAL ALLEGATIONS REGARDING INDIRECT INFRINGEMENT OF THE '463 PATENT

178.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-177 as though fully set forth in their entirety.

179.    Defendant has also indirectly infringed the '463 Patent by inducing others to directly infringe the '463 Patent.  Defendant has induced users, including users of Defendant's systems, to directly infringe the '463 Patent (literally and/or under the doctrine of equivalents) by using the accused systems, methods, and/or services.  Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to make or use the Accused Instrumentalities in a manner that infringes one or more claims of the '463 Patent, including, for example, Claim 11 of the '463 Patent.  Such steps by Defendant included, among other things, advising, encouraging, or directing personnel, contractors, or suppliers to use the accused services in an infringing manner; and/or distributing instructions that guide personnel, contractors, or suppliers to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '463 Patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '463 Patent.  Defendant's inducement is ongoing.

180.    Defendant has knowledge of the '463 Patent at least as of the date when it was notified of the filing of this action.

181.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

182.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

183.     Defendant's direct and indirect infringement of the '463 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

184.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,832,519

185.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-184 as though fully set forth in their entirety.

186.     On November 28, 2017, U.S. Patent No. 9,832,519 ("the '519 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Interactive Video Distribution System And Video Player Utilizing A Client Server Architecture." HaulStars owns all substantial rights, interest, and title in and to the '519 Patent, including the sole and exclusive right to prosecute this action and enforce the '519 Patent against infringers, and to collect damages for all relevant times.  A copy of the '519 Patent is attached as Exhibit D.

187.     The '519 Patent describes a system for distributing interactive videos, including enhanced video navigation and video content sharing.  The claims of the '519 Patent are not directed to an abstract idea.  For example, claim 1 of the '519 Patent recites hardware components of a system, including a processing device, non-transitory memory storing programmatic code that, when executed, causes the system to perform a series of operations.  Those operations cause the

claimed system to receive over a network an upload of a video or link to a video, provide a user interface over a network that enables a user to utilize navigation images and links, receive an association of a given navigation image, receive an association of a link to a networked destination, provide a video player for display on a second user terminal, enable the playing of the first video, and ultimately provide a share control displayed with a video player.  Taken as a whole, the claimed inventions of the '519 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components performing an inventive series of operations that improve upon the functionality of interactive video content.

188.    The written description of the '519 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

189.    Defendant directly infringes (literally and/or under the doctrine of equivalents) at least Claim 1 of the '519 Patent by making, using, selling, and/or offering for sale Defendant's Video Playback System.  Defendant's infringement in this regard is ongoing.

190.    Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

191.    Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '519 Patent.

## ADDITIONAL ALLEGATIONS REGARDING INDIRECT INFRINGEMENT OF THE '519 PATENT

192.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-191 as though fully set forth in their entirety.

193.     Defendant has also indirectly infringed the '519 Patent by inducing others to directly infringe the '519 Patent.  Defendant has induced users, including Defendant's customers, to directly infringe the '519 Patent (literally and/or under the doctrine of equivalents) by using the accused systems, methods, and/or services.  Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to make or use the Accused Instrumentalities in a manner that infringes one or more claims of the '519 Patent, including, for example, Claim 1 of the '519 Patent.  Such steps by Defendant included, among other things, advising, encouraging, or directing personnel, contractors, or suppliers to use the accused services in an infringing manner; and/or distributing instructions that guide personnel, contractors, or suppliers to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '519 Patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '519 Patent.  Defendant's inducement is ongoing.

194.     Defendant has knowledge of the '519 Patent at least as of the date when it was notified of the filing of this action.

195.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

196.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

197.     Defendant's direct and indirect infringement of the '519 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

198.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,205,987

199.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-198 as though fully set forth in their entirety.

200.     On February 12, 2019, U.S. Patent No. 10,205,987 ("the '987 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Interactive Video Distribution System And Video Player Utilizing A Client Server Architecture." HaulStars owns all substantial rights, interest, and title in and to the '987 Patent, including the sole and exclusive right to prosecute this action and enforce the '987 Patent against infringers, and to collect damages for all relevant times.  A copy of the '987 Patent is attached as Exhibit E.

201.     The '987 Patent describes a system for distributing interactive videos, including enhanced video navigation and video content sharing.  The claims of the '987 Patent are not directed to an abstract idea.  For example, claim 1 of the '987 Patent recites a video system including a network interface, a processing device, non-transitory memory to store programmatic code that, when executed by the processing devices, causes the video system to perform a series

of operations.  Those operations cause the claimed system to provide a user with an interface enabling the user to upload a video or link, provide a user with an additional user interface enabling the user to upload an image and text and a link associated with the image, storing the uploaded image, text, and link, and enable the video player to play the video and display the uploaded images, and detect that a user has selected the first or the second image, activating and accessing a link.  Taken as a whole, the claimed inventions of the '987 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components performing an inventive series of operations that improve upon the functionality of interactive video content.

202.     The written description of the '987 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

203.     Defendant directly infringes (literally and/or under the doctrine of equivalents) at least Claim 1 of the '987 Patent by making, using, selling, and/or offering for sale Defendant's Video Playback System.

204.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

205.      Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '987 Patent.

## ADDITIONAL ALLEGATIONS REGARDING INDIRECT INFRINGEMENT OF THE '987 PATENT

206.      Plaintiff repeats and re-alleges the allegations in Paragraphs 1-205 as though fully set forth in their entirety.

207.      Defendant has also indirectly infringed the '987 Patent by inducing others to directly infringe the '987 Patent.  Defendant has induced users, including Defendant's customers, to directly infringe the '987 Patent (literally and/or under the doctrine of equivalents) by using the accused systems, methods, and/or services.  Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to make or use the Accused Instrumentalities in a manner that infringes one or more claims of the '987 Patent, including, for example, Claim 1 of the '987 Patent.  Such steps by Defendant included, among other things, advising, encouraging, or directing personnel, contractors, or suppliers to use the accused services in an infringing manner; and/or distributing instructions that guide personnel, contractors, or suppliers to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '987 Patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '987 Patent.  Defendant's inducement is ongoing.

208.      Defendant has knowledge of the '987 Patent at least as of the date when it was notified of the filing of this action.

33

209.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

210.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

211.    Defendant's direct and indirect infringement of the '987 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

212.    Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,354,288

213.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-212 as though fully set forth in their entirety.

214.    On July 16, 2019, U.S. Patent No. 10,354,288 ("the '288 Patent"), was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "System For Apportioning Revenue For Media Content Derived From An Online Feedback Community." HaulStars owns all substantial rights, interest, and title in and to the '288 Patent, including the sole and exclusive right to prosecute this action and enforce the '288 Patent against infringers, and to collect damages for all relevant times.  A copy of the '288 Patent is attached as Exhibit F.

215.    The '288 Patent describes a system for apportioning revenue generated through advertisement, services, or media sales in an online community.  The claims of the '288 Patent are

34

not directed to an abstract idea.  For example, claim 1 of the '288 Patent recites hardware components of a system, including microprocessors, digital signal processors, integrated circuits, an interface to simultaneously record and stream video from a media submitter to user devices, a network interface configured to communicate over a network to upload media files associated with a media submitter, and a media file data repository to store media files associated with  a media submitter, and associated programmatic code that when executed by the at least one processing device causes the system to perform a series of operations.  Those operations cause the claimed system to provide access to media files, enable communication using a Voice over Internet Protocol, provide a search engine configured to enable users to access a streamable playlist, synchronize media files, and track a number of advertisements and views associated with the media, and enable the provision of online and offline services.  Taken as a whole, the claimed inventions of the '288 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components performing an inventive series of operations that improve upon the functionality of interactive video content, user interaction, including by voice communication, advertising, and online sales.

216.    The written description of the '288 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

217.    Defendant directly infringes (literally and/or under the doctrine of equivalents) at least Claim 1 of the '288 Patent by making, using, selling, and/or offering for sale Defendant's

Model Hub Program and its Content Partner/Premium Viewshare Program. Defendant's infringement in this regard is ongoing.

218.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

219.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '987 Patent.

## ADDITIONAL ALLEGATIONS REGARDING INDIRECT INFRINGEMENT OF THE '288 PATENT

220.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-219 as though fully set forth in their entirety.

221.     Defendant has also indirectly infringed the '288 Patent by inducing others to directly infringe the '288 Patent. Defendant has induced users, including Defendant's customers, to directly infringe the '288 Patent (literally and/or under the doctrine of equivalents) by using the accused systems, methods, and/or services. Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to make or use the Accused Instrumentalities in a manner that infringes one or more claims of the '288 Patent, including, for example, Claim 1 of the '288 Patent. Such steps by Defendant included, among other things, advising, encouraging, or directing personnel, contractors, or suppliers to use the accused services in an infringing manner; and/or distributing instructions that guide personnel, contractors, or suppliers to use the Accused Instrumentalities in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '288

Patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '288 Patent.  Defendant's inducement is ongoing.

222.    Defendant has knowledge of the '288 Patent at least as of the date when it was notified of the filing of this action.

223.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

224.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

225.    Defendant's direct and indirect infringement of the '288 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

226.    Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,506,278

227.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-226 as though fully set forth in their entirety.

228.    On December 10, 2019, U.S. Patent No. 10,506,278 ("the '278 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Interactive Video Distribution System And Video Player Utilizing A Client Server Architecture."

HaulStars owns all substantial rights, interest, and title in and to the '278 Patent, including the sole and exclusive right to prosecute this action and enforce the '278 Patent against infringers, and to collect damages for all relevant times.  A copy of the '278 Patent is attached as Exhibit G.

229.     The '278 Patent describes a system for apportioning revenue generated through advertisement associated with media sales in an online community.  The claims of the '278 Patent are not directed to an abstract idea.  For example, claim 1 of the '278 Patent recites hardware components of a system, including a processing device, a network interface configured to communicate over a network with a remote system identified by the user, and a non-transitory memory storing programmatic code that when executed by the at least one processing device causes the system to perform a series of operations.  Those operations cause the claimed system to implement a first user interface to upload video, cause a second user interface to be displayed to provide for the receipt of an image, text, and a link associated with the image, and process the video, image, and text in specific ways, and enable specific events to occur during playback of the video.  Taken as a whole, the claimed inventions of the '278 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components performing an inventive series of operations that improve upon the functionality of interactive video content.

230.     The written description of the '278 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

231.     Defendant directly infringes (literally and/or under the doctrine of equivalents) at least Claim 1 of the '278 Patent by making, using, selling, and/or offering for sale Defendant's Video Playback System.  Defendant's infringement in this regard is ongoing.

232.     As described above, Defendant made, had made, used, sold, and/or offered to sell products and/or systems, including servers that include at least one processing device, a network interface, and non-transitory memory for storing programmatic code that perform operations according to the claimed inventions of the '278 Patent.

233.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

234.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '987 Patent.

### ADDITIONAL ALLEGATIONS REGARDING INDIRECT INFRINGEMENT OF THE '278 PATENT

235.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-234 as though fully set forth in their entirety.

236.     Defendant has also indirectly infringed the '278 Patent by inducing others to directly infringe the '278 Patent.  Defendant has induced users, including Defendant's customers, to directly infringe the '278 Patent (literally and/or under the doctrine of equivalents) by using the accused systems, methods, and/or services.  Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to make or use the Accused Instrumentalities in a manner that infringes one or more claims of the '278 Patent,

including, for example, Claim 1 of the '278 Patent.  Such steps by Defendant included, among other things, advising, encouraging, or directing personnel, contractors, or suppliers to use the accused services in an infringing manner; and/or distributing instructions that guide personnel, contractors, or suppliers to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '278 Patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '278 Patent.  Defendant's inducement is ongoing.

237.     Defendant has knowledge of the '278 Patent at least as of the date when it was notified of the filing of this action.

238.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

239.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

240.     Defendant's direct and indirect infringement of the '278 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

241.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VIII

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,560,738

242.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-241 as though fully set forth in their entirety.

243.     On February 11, 2020, U.S. Patent No. 10,560,738 ("the '738 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Interactive Video Distribution System And Video Player Utilizing A Client Server Architecture." HaulStars owns all substantial rights, interest, and title in and to the '738 Patent, including the sole and exclusive right to prosecute this action and enforce the '738 Patent against infringers, and to collect damages for all relevant times.  A copy of the '738 Patent is attached as Exhibit H.

244.     The '738 Patent describes a system for providing interactive video.  The claims of the '738 Patent are not directed to an abstract idea.  For example, claim 1 of the '738 Patent recites hardware components of a system, including a processing device, a network interface configured to communicate over a network with a remote system identified by the user, and a non-transitory memory storing programmatic code that when executed by the at least one processing device causes the system to perform a series of operations.  Those operations cause the claimed system to implement a first user interface to upload video, cause a second user interface to be displayed to provide for the receipt of an image, text, and a link associated with the image, and process the video, image, and text in specific ways, and enable specific events to occur during playback of the video.  Taken as a whole, the claimed inventions of the '738 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components performing an inventive series of operations that improve upon the functionality of interactive video content.

41

245.     The written description of the '738 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

246.     Defendant directly infringes (literally and/or under the doctrine of equivalents) at least Claim 1 of the '738 Patent by making, using, selling, and/or offering for sale Defendant's Video Playback System.  Defendant's infringement in this regard is ongoing.

247.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

248.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '738 Patent.

## ADDITIONAL ALLEGATIONS REGARDING INDIRECT INFRINGEMENT OF THE '738 PATENT

249.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-248 as though fully set forth in their entirety.

250.     Defendant has also indirectly infringed the '738 Patent by inducing others to directly infringe the '738 Patent.  Defendant has induced users, including Defendant's customers, to directly infringe the '738 Patent (literally and/or under the doctrine of equivalents) by using the accused systems, methods, and/or services.  Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to make or use the

Accused Instrumentalities in a manner that infringes one or more claims of the '738 Patent, including, for example, Claim 1 of the '738 Patent.  Such steps by Defendant included, among other things, advising, encouraging, or directing personnel, contractors, or suppliers to use the accused services in an infringing manner; and/or distributing instructions that guide personnel, contractors, or suppliers to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '738 Patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '738 Patent.  Defendant's inducement is ongoing.

251.    Defendant has knowledge of the '738 Patent at least as of the date when it was notified of the filing of this action.

252.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

253.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

254.    Defendant's direct and indirect infringement of the '738 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

255.    Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

HaulStars requests that the Court find in its favor and against Defendant, and that the Court grant HaulStars the following relief:

a.      Judgment that one or more claims of the Asserted Patents have been infringed, directly or indirectly, either literally and/or under the doctrine of equivalents, by Defendant and/or all others acting in concert therewith;

b.      A judgment and order preliminarily and permanently enjoining Defendant and Defendant's officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringing, directly or indirectly, the Asserted Patents; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

c.      Judgment that Defendant accounts for and pays to HaulStars, jointly and severally, all damages to and costs incurred by HaulStars because of Defendant's infringing activities and other conduct complained of herein;

d.      Judgment that Defendant's infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement up until entry of the final judgment with an accounting as needed;

e.      Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.      That this Court declare this an exceptional case and award HaulStars its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

g.     All other and further relief as the Court may deem just, equitable, and proper under the circumstances.

Dated: September 28, 2020                    Respectfully submitted,


By: */s/ Fred I. Williams*
Fred I. Williams
Texas State Bar No. 00794855
Michael Simons
Texas State Bar No. 24008042
Jonathan L. Hardt
Texas State Bar No. 24039906
Chad Ennis
Texas State Bar No. 24045834
WILLIAMS SIMONS & LANDIS PLLC
327 Congress Ave., Suite 490
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
msimons@wsltrial.com
jhardt@wsltrial.com
cennis@wsltrial.com

Todd E. Landis
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff Scorpcast, LLC*
*dba HaulStars*